**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━

**NIAGARA BLOWER COMPANY,**

                                    **Petitioner**

**v.**                                                    **16-CV-0262V(Sr)**

**SHOPMEN'S LOCAL UNION 576**
**OF THE INTERNATIONAL ASSOCIATION**
**OF BRIDGE, STRUCTURAL, ORNAMENTAL,**
**AND REINFORCING IRON WORKERS,**

                                    **Respondent.**

━━━━━━━━━━━━━━━━━━━━━━━━━

## REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. Lawrence J.
Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and
report upon dispositive motions.  Dkt. #13.

Currently before the Court is Niagara Blower Company's ("Company's"),
petition, pursuant to § 301 of the Labor Management Relations Act ("LMRA"), and § 10
of the Federal Arbitration Act ("FAA"), to vacate an arbitration award insofar as the
arbitrator modified the penalty imposed upon an employee by the Company (Dkt. #4),
and Shopmen's Local Union 576 of the International Association of Bridge, Structural,
Ornamental, and Reinforcing Iron Workers' ("Union's"), counterclaim, pursuant to § 9 of
the FAA, to enforce the arbitrator's award.  Dkt. #5.

For the following reasons, it is recommended that the Company's petition be granted and the Union's counterclaim be denied.

## BACKGROUND

John Beller commenced employment at the Company as a welder in October of 2011.  Dkt. ##1-2 & 5, ¶ 10.  On March 6, 2015, a reasonable suspicion alcohol test performed on Mr. Beller during his work shift revealed the presence of alcohol in his system.  Dkt. ##1-2 & 5, ¶ 10.  The Company terminated Mr. Beller's employment on March 9, 2015.  Dkt. ##1-2 & 5, ¶ 10.

The Company and Union were parties to a collective bargaining agreement ("CBA").  Dkt. ##1-2, & 5, ¶ 5.  The Union grieved Mr. Beller's termination to arbitration, stipulating to the following issue for resolution:

> Was the discharge of John Beller for proper cause? If not, what shall the remedy be?"

Dkt. ##5 & 7, ¶ 13.

As the arbitrator acknowledged in his opinion and award (Dkt. #1-7, p.2), Section 6 of the CBA provides as follows:

> Management Prerogatives - Shop Rules
>
> (A)  The management of the Company's plant and the direction of its working forces, including the right to establish new jobs, abolish or change existing jobs, increase or decrease the number of jobs, change materials, processes, products, equipment and operations shall be vested exclusively in the Company.  Subject to the provisions of this agreement, the Company shall have the right to schedule and assign work to be performed and the right to hire or re-

hire employees, promote, recall employees who are laid off,
demote, suspend, discipline or discharge for proper cause,
transfer or lay off employees because of lack of work or
other legitimate reasons, it being understood, however, the
Company shall not discipline or discharge an employee
except for proper cause, or otherwise improperly
discriminate against an employee.

(B)  The Company shall have the right to establish, maintain
and enforce reasonable rules and regulations to assure
orderly plant operations, it being understood and agreed that
such rules and regulations shall not be inconsistent or in
conflict with the provisions of this agreement.  The Company
shall maintain on its bulletin boards and furnish the Union
with a written or printed copy of all such rules and
regulations and all changes therin.  Changes in existing
rules and regulations, as well as new rules and regulations
promulgated by the Company, shall not become effective
until five (5) regular work days after copies thereof have
been furnished to the Union and posted on the Company's
bulletin boards.

Dkt. #1-3, p.11.  The arbitrator also acknowledged (Dkt. #1-7, p.17), that Section

17(A)(3) of the CBA provides that

The continuous service and seniority status of any employee
shall not be affected or interrupted as a result of layoffs,
injury, illness, leaves of absence, or other cause not due to
the voluntary act or fault of the employee; however, the
continuous service of an employee and his or her seniority
status shall be terminated for . . .

* * *

(3) Discharge of an employee for proper cause.

Dkt. #1-3, pp.36-37.

The arbitrator further acknowledged (Dkt. #1-7, p.17), the Company's

Plant Rules, which provide a system of progressive discipline, ranging from attendance

violations to intolerable violations.  Dkt. #1-4, p.1.  An Intolerable Violation is defined as

a violation

> which, because of its severity, cannot be permitted at any
> time, regardless of the circumstance.  An associate
> committing such an offense is subject to immediate
> termination.  The following is a list of actions although not all
> inclusive, may result in immediate termination and
> considered Gross Misconduct.

> * * *

> ● Possession, use or sale of any alcoholic beverage or
> illegal drugs on Company property or working while
> impaired by alcohol or drugs.

> * * *

Dkt. #1-4, pp.1-2.  The arbitrator noted that there was no question that Mr. Beller was

aware of the relevant work rules.  Dkt. #1-7, p.19, n.1.


        Following two days of hearings, the arbitrator determined that the

Company had met its burden of proof of establishing misconduct, *to wit*, that Mr. Beller

reported to work on March 6, 2015 "while he was impaired because of the ingestion of

alcoholic beverages."  Dkt. #1-7, p.21.  The arbitrator also accepted as credible the

medical evidence that Mr. Beller's Blood Alcohol Content ("BAC"), while at work "would

have adversely affected his judgment, coordination, depth perception, vision,

concentration, his peripheral vision, and, in total, would have adversely affected his

ability to function in the manufacturing environment."  Dkt. #1-7, p.20.  The arbitrator did

not find that this evidence justified the Company's termination of Mr. Beller.  Dkt. #1-7,

p.21.  The arbitrator opined that although Mr. Beller's

> short period of employment and less than stellar work record
> hardly constitute mitigating factors in the instant case, the

> Arbitrator's realistic look at the nature of the offense requires him to conclude that Grievant's violation of the Company's Rules is not one that justifies his termination. In the absence of evidence that Grievant's behavior or work was, in fact, compromised, one is left with the potential for adverse consequences to have occurred. Under these circumstances, while Grievant's misconduct could be thought of as substantial to some extent, it cannot fairly be labeled as misconduct that requires his termination. The Company, needless to say, has a right to enforce strictly its Substance Abuse Policy, and the finding of misconduct herein reflects that fact. On balance, the Arbitrator finds that the Company's substantial interests set forth in its Substance Abuse Policy require that Grievant be punished to some extent to impress upon him and other employees the need for absolute compliance with the Substance Abuse Policy. The Arbitrator thus will modify the penalty of termination to a period of a fifteen-work day unpaid suspension. Grievant should be placed on notice by this Award that any future violation of the Substance Abuse Policy would clearly justify his termination.

Dkt. #1-7, pp.21-22.

The Court notes that § 20(B) of the CBA denies the arbitrator "the right to add to, subtract from, modify or disregard any of the terms or provisions of [the CBA]." Dkt. #1-3, p.47.

## DISCUSSION AND ANALYSIS

The Company argues that the arbitrator exceeded his authority under the CBA by interposing his personal view as to an appropriate penalty for violation of plant rules in place of the Company's negotiated right to establish, maintain and enforce reasonable rules and regulations to assure orderly plant operations. Dkt. #1-8, pp.8-13. The Company also argues that the arbitrator exceeded the authority granted to him by the parties' submission of issues to be resolved in arbitration. Dkt. #1-8, pp.13-16.

Finally, the Company challenges the arbitrator's determination that an employee can only be terminated where there is evidence that the employee's behavior or work was compromised as a violation of public policy.  Dkt. #1-8, pp.16-20.

The Union responds that it was within the arbitrator's authority to find that the violation did not rise to the level of proper cause to terminate Mr. Beller.  Dkt. #5-3, p.8.

The Company replies that the CBA vests it with the right to establish the plant rule prohibiting employees from working while impaired by alcohol or drugs and to enforce the penalty of immediate termination against any employee violating this rule. Dkt. #8, pp.5-6.  Moreover, the Company notes that the arbitrator fully credited Dr. Costanza's testimony that Mr. Beller's BAC was likely .09% when he reported to work and that such a BAC would have adversely affected his judgment, coordination, depth perception, vision, concentration and ability to function in the manufacturing environment.  Dkt. #8, pp.7-8. Given Mr. Beller's use of plasma torches and hydraulic presses in close proximity to other employees, the Company argues that there can be no doubt the Mr. Beller placed himself and his co-workers at risk by working while impaired by alcohol.  Dkt. #8, p.8.  The Company reiterates that the arbitrator had no authority to impose his own ideas of proper cause upon the Company's plant rules or to condition termination upon actual adverse consequences. Dkt. #8, pp.10-11.  Finally, the Company notes that the arbitrator did not find that the plant rule imposing termination for an intolerable violation conflicted with the terms of the CBA. Dkt. #8, p.10.

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions to confirm or vacate labor arbitration awards interpreting a collective bargaining agreement. *Harry Hoffman*

*Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990). In analyzing such petitions, federal courts rely upon the Federal Arbitration Act ("FAA"), for rules of federal common law to govern such disputes. *Time Warner Cable of New York City, LLC v. International Brotherhood of Elec. Workers*, 170 F. Supp.3d 392, 412 (E.D.N.Y. Mar. 16, 2016), *aff'd*, 684 Fed. Appx. 68 (2d Cir. 2017). Judicial review of an arbitration award is extremely deferential under both statutes. *Supreme Oil Co. v. Abondolo*, 568 F. Supp.2d 401, 405 (S.D.N.Y. 2008).

Section 10 of the FAA provides specific grounds for vacating arbitration awards, including, as relevant to the instant petition, where the arbitrator exceeded his power. 9 U.S.C. § 10(a) (4). Where a petition challenges an arbitration award pursuant to § 10(a)(4), the court must focus on whether the arbitrator was empowered to reach a certain issue, not whether the arbitrator correctly decided that issue. *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 122 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012). "The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 37 (2008). The district court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id.* at 38. "It is only when an arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Major League Baseball Players  Assoc. v. Garvey*, 532 U.S. 504, 509  (2001), *quoting United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Thus, an arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers*, 363 U.S. at 597. An award draws its essence from an agreement if it could reasonably have been derived from the terms of the contract itself. *Time Warner*, 170 F. Supp.3d at 413.

-7-

In the instant case, the CBA authorized the Company to establish, maintain and enforce reasonable rules and regulations to assure orderly plant operations.  Dkt. #1-3, p.11. The Union did not challenge the reasonableness of the Company's rule imposing immediate termination upon an employee working while impaired by alcohol and the arbitrator determined that the employee did, in fact, violate the rule when he reported to work "while he was impaired because of the ingestion of alcoholic beverages."  Dkt. #1-7, p.21. Having reached this conclusion, the arbitrator was not free to substitute the penalty of termination set forth in the rule promulgated pursuant to the authority afforded by the CBA with his own brand of industrial justice, *to wit,* a 15-day unpaid suspension. *See 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 526 (2d Cir. 2005) (arbitrator had no authority to fashion an alternative remedy after determining that company had just cause to terminate the employee); *American LaFrance v. Int'l Ass'n of Machinists*, 559 F. Supp. 21, 22 (W.D.N.Y. 1983) (arbitrator applied his own brand of industrial justice in reinstating employee after determining employee had committed assault where company had promulgated rules forbidding fighting or attempting bodily injury to others and CBA reserved to the company the right to discharge for proper cause); *cf. First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 894-895 (2d Cir. 1997) (finding rules declaring certain violations would constitute just cause for immediate discharge exceeded the Company's rights under the CBA where the CBA empowered the arbitrator to determine whether discharge was for just cause)*; St. Mary Home v. Serv. Emps. Int'l Union Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997) (noting that the CBA could have been written to specify that certain violations would automatically satisfy just cause for dismissal but instead empowered the arbitrator to decide whether marijuana possession constituted just cause for discharge).

## CONCLUSION

For the foregoing reasons, it is recommended that the Company's petition to vacate an arbitration award insofar as the arbitrator modified the penalty imposed

upon an employee by the Company (Dkt. #4), be granted and the Union's counterclaim to enforce the arbitrator's award (Dkt. #5), be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
               **November 3, 2017**

                                   *s/ H. Kenneth Schroeder, Jr.*
                                   **H. KENNETH SCHROEDER, JR.**
                                   **United States Magistrate Judge**